IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEJANDRO MADRID, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>JAMES TILTON, et al.,<br><br>    Defendants. | NO. C90-3094 TEH<br><br>CLASS ACTION<br><br>ORDER DISMISSING CCPOA'S PETITION TO CONFIRM ARBITRATION AWARD |

The Court is in receipt of the Special Master's Final Report and Recommendation re: CCPOA Motion to Hear and then Grant Petition to Confirm Arbitrator's Opinion and Award, filed April 30, 2008 ("Final Report"). The Court has carefully reviewed the Final Report, the positions of the parties expressed in the exhibits thereto, and the Defendants' Comments to the Final Report. As set out more fully below, the Court agrees with the Special Master that at this point, the Court would have to decide complex and novel questions of state labor law in order to rule on the CCPOA's Motion. The Court therefore declines to exercise supplemental jurisdiction over the CCPOA's Petition under state law to confirm the arbitration award.

**FACTUAL AND PROCEDURAL BACKGROUND**

    **The Medical Committee Dispute, the Arbitrator's Award, and the Motions of the CCPOA and Special Master**

In March of 1997, the Court approved a comprehensive Health Care Remedial Plan, which consisted of 13 volumes of policies and procedures covering all significant aspects of medical and mental health care at Pelican Bay State Prison ("PBSP"). The remedial plan was

developed by the State over the course of many months of cooperative efforts between clinicians from the CDCR, court experts, experts selected by the parties, and the Special Master. The Court noted that the plan was the "defendant's plan, and it represents defendants' policy choices – so long as those choices did not preclude an effective remedy." Remedial Order Re: Medical and Mental Health Services, filed March 10, 1997 at 4:1-2.

The California Correctional Peace Officer's Association ("CCPOA") is a labor organization certified as the exclusive bargaining unit for Corrections by California's Public Employment Relations Board, pursuant to the Ralph C. Dills Act, Cal. Gov. Code § 3512 *et seq.* The CCPOA membership and the California Legislature ratified an MOU that came into effect on July 1, 2001 and was intended to run though July 2, 2006. Section 2.10 of that MOU provided:

> 2.10 A - "Representation on Committees"
>
> If a management-initiated committee has Unit 6 employees participating on said committees or in its meetings, and/or the committee is developing a plan or policy on issues within the scope of representation, CCPOA shall be provided a seat on the committee. ...

Beginning in 2004, the CCPOA filed grievances claiming the MOU entitled CCPOA to place representatives on five medical committees that the CDCR had established in response to the Court's Remedial Order, and as part of its Health Care Remedial Plan: the Quality Management Committee or Continuous Quality Improvement Committee; Medical Quality Improvement Teams; the Death Review Committee; the Medical Emergency Response Committee; and the Therapeutic/Pharmacy Services Committee. The grievances were denied by the State and eventually set for arbitration. In a January, 2007 Opinion and Award, Arbitrator Alexander Cohn found there was no evidence that this Court intended to nullify that portion of the MOU simply because it had assumed responsibility for the healthcare of inmates at the various prison facilities. Accordingly, the Arbitrator's Opinion and Award sustained the grievances and found that "[a]bsent a court order to the contrary ... the State employer violated Section 2.10A of the MOU... As soon as practical, the State

employer shall offer CCPOA the opportunity to have a seat on each of these committees at Pelican Bay State Prison." January 22, 2007 Opinion and Award at 24:3:27-24:5.

On July 3, 2007, the CCPOA filed a Motion to Hear and then Grant Petition to Confirm Arbitrator's Opinion and Award in this Court, seeking confirmation of the award under the California Arbitration Act, Code of Civil Procedure §§ 1285 *et seq.* On September 4, 2007, the Special Master filed a competing "Motion to Protect *Madrid* Healthcare Remedial Plan," which sought an Order declaring that enforcing the arbitration award would jeopardize the Remedial Plan and delivery of constitutionally adequate health care at PBSP.

On November 1, 2007, after reviewing submissions from the Special Master, the parties, representatives of the Receiver in *Plata v. Schwarzenegger*, United States District Court for the Northern District of California Case No. C-01-TEH, and the Special Master in *Coleman v. Schwarzenegger*, United States District Court for the Eastern District of California Case No. C-S-90-020 LKK, the Court issued an Order finding that it had insufficient evidence before it to rule on the matter and directing the Special Master to investigate and prepare further findings and recommendations about the effects on delivery of healthcare at Pelican Bay of having CCPOA representative on each of the five medical committees at issue.

**The Special Master's Final Report and Litigants' Positions**

On April 30, 2008, the Special Master filed his Final Report, which addressed the lapse of the MOU on which the arbitrator's Opinion and Award was based and its effect on the pending motions.

As the Special Master's Final Report explained, when the dispute between the parties began, it concerned a live MOU provision. As set out above, the MOU of which § 2.10 was a part was intended to be effective from 2001-2006. By the time the CCPOA filed its motion to confirm the Arbitrator's Award, the 2001-2006 MOU had expired, but, pursuant to

3

Cal. Gov. Code § 3517.8(a), the terms of the MOU continued in place until the parties completed negotiations or reached an impasse.

On September 17, 2007, however, the CCPOA rejected the State's last, best, and final offer ("LBFO"), so that the parties were without a collective bargaining agreement. Pursuant to Cal. Gov. Code § 3517.8(b), the State was free to "implement any or all of its last, best, and final offer." The State did so. One of the provisions that it implemented was section 2.10. *See* Final Report Exh 2.A.1 (February 4, 2008 letter from Department of Personnel Administration ("DPA") to CCPOA, listing "Implemented Terms" of the LBFO).

The Special Master sought input from the parties, the CCPOA, and the Department of Personnel Administration on whether the absence of an MOU had a legal effect on the Arbitrator's Opinion and Award.

In response, the CCPOA argues that DPA never proposed to terminate or modify § 2.10 during bargaining, and the State chose to implement it unchanged. CCPOA contends § 2.10 should be interpreted as including those arbitrator decisions which applied to the section at the time of the LBFO. CCPOA argues that although the question of whether the Arbitrator's award "rolls over" into the Implemented Term § 2.10 is one of state labor law, the Court has supplemental jurisdiction to decide the question and should do so. Moreover, CCPOA points out that the status of the underlying MOU is a legal defense to the motion to confirm the arbitration award which is untimely and should have been raised in briefing on the motion in 2007.

The State/Department of Personnel Administration, on the other hand, argues that as of September 18, 2007, when the State implemented the LBFO, the MOU ceased to exist. The Arbitrator's Opinion and Award interpreting provisions of the old MOU now has no legal or contractual significance. The fact that the Implemented Term § 2.10 reflects the same language as § 2.10 of the MOU has no import because the State's "bargaining intent" was different – the State had no intent to agree to the Arbitrator's interpretation of the term at the point the CCPOA and the State reached impasse. The State therefore argues the motion to confirm the Arbitrator's award interpreting the now-defunct MOU should be dismissed as

4

moot. Nonetheless, "the State agrees that the disputed issue concerns State labor law and is properly decided, if at all, by the appropriate State forum." Final Report Exh. 6, DPA Comments to Draft Report, at 3.

Defendants object that the Court does not have subject matter jurisdiction over the motion to confirm the award, and in addition agree that "this Court should not be the venue for resolving implemented terms of an expired labor contract, a subject involving novel and complex issues of state law." Def. Comment to Final Report, filed May 13, 2008, at 1-2.[1]

On the basis of this briefing, the Special Master issued two findings:

1. Whether the Arbitrator's award which is the subject of this Motion "rolls over" or otherwise applies after the termination of the previously existing State/CCPOA MOU at PBSP is primarily a question of State labor law. The Order of Reference does not provide authority for the Special Master to interpret questions of State labor law.

2. Numerous sections of the prior MOU, including Section 2.10, have been implemented by the State. A decision concerning 2.10 may provide precedential authority in the event that similar disputes arise concerning other implemented provisions.

Final Report at 3. Special Master recommends that the Court dismiss the CCPOA's motion without prejudice.

**DISCUSSION**

Title 28 U.S.C. § 1367 gives this Court supplemental jurisdiction over state law claims which, like the CCPOA's petition to confirm the arbitration award under Cal. Code Civ. Pro. § 1286, are so related to federal claims in the action as to form part of the same case or controversy. 28 U.S.C. § 1367(a). Yet such jurisdiction is rooted in "a doctrine of discretion," *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 172 (1997), *quoting Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966), and § 1367(c) codifies the district court's discretion to decline jurisdiction over pendent claims by considering and weighing at every stage of the litigation, the values of judicial economy, convenience,

---

[1] Moreover, on April 30, 2008 – the day the Special Master filed his Final Report, and after the parties had filed their responses to his draft report – DPA informed the CCPOA that it would now interpret § 2.10 as not covering the medical committees at issue.

5

fairness, and comity which underlie it. *See id.* at 173. Specifically, § 1367(c)(1) provides that a district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if — (1) the claim raises a novel or complex issue of State law ...."

The Court agrees with the Special Master that after the lapse of the MOU and implementation of the LBFO, the CCPOA's motion necessarily raises both novel and complex issues of state labor law. Whether an Arbitrator's interpretation of a contract becomes incorporated into identically-phrased terms of a LBFO, implemented during periods of negotiation for a successor contract after impasse, is a question involving relatively unusual factual circumstances that arises under a relatively new statutory provision of state labor law, Cal. Gov. Code § 3517.8. It is not even clear whether the court's analysis should turn on the effect of the Arbitrator's opinion on the expired MOU itself, on the implemented terms, or on the shared understanding of the parties during negotiations over a successor MOU. *See, e.g.,* Elkouri & Elkouri, *How Arbitration Works* at 576 (6th ed. 2003)(in interpreting CBA, some arbitrators take the position they do not necessarily need to follow earlier arbitration awards; others hold that "prior decisions are deemed incorporated into the labor agreement"); at 453, 459 (discussing effect of meaning given by parties during negotiations, and of granting of a grievance, on contract interpretation)*; California State Employees' Assn. v. Public Employment Relations Bd.*, 51 Cal.App.4th 923 (1996)(pre-Gov. Code § 3517.8 decision, discussing whether unilateral change during pre-impasse negotiation over successor agreement, when employer had agreed contract terms would remain in effect, is an unfair labor practice). Moreover, as the Special Master points out, any decision by this Court on how to interpret the Implemented Terms could have an effect on disputes over the meaning of the many other Implemented Terms not at issue in this case. This novel question of state labor law, involving the state's relationship with its own employees, should be resolved in state court.

The Court acknowledges that arguments about the expiration of the MOU and its effect on the arbitration award could have been raised months ago in opposition to the CCPOA's motion. Nonetheless, the Court finds that the significant comity concerns at issue

6

here far outweigh procedural considerations. The CCPOA will suffer no prejudice, as it can seek confirmation of the award in state Court.

Accordingly, the Court declines to exercise supplemental jurisdiction over the CCPOA's Petition to Confirm Arbitrator's Opinion and Award. Good cause appearing therefore, the Motion to Hear and Grant the Petition is DENIED without prejudice, and the Petition DISMISSED without prejudice. Dismissal of the Petition renders the Special Master's Motion to Protect the Remedial Plan moot.

**IT IS SO ORDERED.**

Dated: May 23, 2008

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT